WALKER *v.* FERRIS

No. 41816        April 24, 1961        128 So. 2d 865

*Prewitt & Bullard,* Vicksburg, for appellant.

*Vollor & Thames,* Vicksburg, for appellees.

KYLE, J.

The appellant, Mrs. Lurlene Walker, plaintiff in the court below, recovered a judgment in the Circuit Court of Warren County against the appellee, Mrs. Lucian M. Ferris, defendant in the court below, in the sum of $1800, for personal injuries alleged to have been sustained by the appellant as a result of an automobile accident. The appellant filed a motion for a new trial on the measure of damages only. The motion was overruled, and the appellant has prosecuted an appeal to this Court. The appellee has filed no cross assignment of errors.

The appellant's attorneys have assigned and argued three points as grounds for reversal of the judgment of the lower court: (1) That the trial court erred in refusing to grant one instruction requested by the appellant which will be referred to later; (2) that the verdict of the jury was inadequate to compensate the appellant for the personal injuries sustained by the appellant as a result of the defendant's negligence, and that the verdict was so inadequate as to evince bias, passion or prejudice on the part of the jury; and (3) that the amount of the verdict was so grossly and shockingly inadequate as to require a new trial on the measure of damages.

The record shows that the accident occurred on June 17, 1958, about 5:30 o'clock P.M., when the appellant was riding home from work with Mrs. Elise Robertson in Mrs. Robertson's automobile. The appellant lived at 1104 Monroe Street, in the City of Vicksburg. Monroe Street at the time of the accident was a boulevard street running north and south, with a wide grass plot or median strip between two one-way traffic lanes. The automobile in which the appellant was riding as a passenger was traveling northwardly on Monroe Street, in the East traffic lane. The appellant's home was in an apartment

house situated on the West side of Monroe Street; and when the vehicle in which the appellant was riding reached the point on Monroe Street immediately east of the apartment house, the driver of the car stopped the car on the left side of the north bound traffic lane near the edge of the grass plot, so that the appellant could get out of the car and cross over the boulevard section of the street and enter her apartment through the Monroe Street entrance. The appellee was proceeding northwardly in the same traffic lane just behind the Robertson car; and when the Robertson car came to a stop the appellee's car collided with the rear end of the Robertson car. The appellant testified that when the Robertson car was brought to a complete stop, she reached for the door handle in an effort to get out, and as she did so she was thrown forward as a result of the car in which she was riding being struck from behind by the appellee's car. The appellant testified that she did not remember whether she struck her body against anything inside the Robertson vehicle or not, but she remembered being dazed and weak. The appellant alighted from the Robertson car, and, after remaining at the scene of the accident a few minutes, made her way across the southbound traffic lane of Monroe Street to her apartment.

The appellant testified that her neck started to swelling and hurting almost immediately, and that on June 18 she went to see Dr. Cecil Knox at the Vicksburg Clinic. Dr. Knox referred her to Dr. Joseph M. Moore, an orthopedic surgeon of the Vicksburg Clinic and Vicksburg Hospital Staff. The appellant stated that she was x-rayed, examined and treated by Dr. Moore on June 18 and again on July 29, and that she took some physical therapy treatments at the Vicksburg hospital. She stated that she later saw Dr. W. H. Parsons, and remained under treatment of Dr. Parsons seven weeks. Dr. Parsons performed a surgical operation on her neck, and she remained at the hospital about five days and then spent

about two weeks at home convalescing. She stated that after the surgery the pain did not recur. Her doctor and hospital expenses amounted to $600. On cross-examination the appellant stated that Dr. Moore treated her only twice, and that after she saw Dr. Moore the second time she went to see Dr. Donald Hall, who treated her for a glandular trouble.

Mrs. Elise Robertson, the driver of the automobile in which the appellant was riding on June 17, testified that she stopped her car at the stop sign at the China Street intersection, and then proceeded up hill along Monroe Street at a rate of speed of 15 or 20 miles an hour, until she came to the point on Monroe Street where Mrs. Walker was accustomed to get off; that after she passed the Marie Apartments she gave a hand signal with her left hand out of the window of her car; and that she had come to a complete stop when Mrs. Ferris' car collided with her car. She stated that she was aware of the fact that there was traffic behind her when she applied her brakes and came to a stop. She stated that Mrs. Ferris told her that she just did not see her and that it was her fault.

Dr. J. M. Moore, who was called to testify as a witness for the plaintiff, testified that Mrs. Walker came to see him on June 18, 1958, and complained of pains and swelling in the neck. Most of the pain and swelling was on the right side. She described an accident she had been in as a passenger in an automobile the day before. The doctor stated that from a medical standpoint such injury was called a whiplash injury to the neck. He obtained x-ray pictures. He found no fractured bones when he examined the pictures. His diagnosis was that Mrs. Walker had two things wrong with her. One was a strain or overstretch of muscles and ligaments in the neck resulting from the whiplash injury. The other was that she had nodules. She told him that she had never had nodules before, and to the best of his

knowledge at that time the accident caused the nodules. The doctor stated that there would be pain from both of these complaints. He recommended therapy treatments. He saw Mrs. Walker again on July 29, 1958, and when he examined her at that time she still had a great deal of swelling and nodules up and down the right side of her neck. The doctor stated that, when he examined Mrs. Walker on June 18, he did not consider her injury of June 17 as a serious injury; and when he examined her again on July 29, he saw no evidence of a ruptured muscle that would require an operation. He stated that Mrs. Walker had another complaint at that time. She had been seeing Dr. Hall, an eye, ear, nose and throat specialist, about a stone or glandular trouble. In answer to a leading question, Dr. Moore stated that the glandular trouble had nothing to do with the accident of June 17. He stated that the nodules might have formed over night, or they may have been there before the accident.

Dr. W. H. Parsons testified that he examined Mrs. Walker on August 10, 1958; that she complained of pains and discomfort in the right side of her neck, and that she had some swelling in the neck. He presumed that she had suffered an injury to a muscle in the neck, a whiplash injury. He advised her to go to the Vicksburg Hospital for an operation and he performed the operation August 11, 1958. The operation was ''down the neck''. There was no damage to the blood vessel or the nerve trunks in his judgment. There was no gross rupture of the muscle, and in his opinion, there was no malfunction of a gland. The doctor stated that Mrs. Walker was discharged from the hospital on August 16; that she reported to his office for examination several times thereafter; but he had not examined her for ''sometime.'' The doctor stated that Mrs. Walker would have a scar on her neck all of her life. He thought the pain would subside within a period of six months. The doctor stated that, in his opinion, the swelling which he had ob-

served was not due to an infection of a gland. He admitted that Dr. Donald Hall had operated on Mrs. Walker on August 11; that she was having some trouble with the submaxillary gland at that time; but in his opinion the swelling which he observed was not connected with the submaxillary gland. He did not see the swelling of the gland on August 10, when he examined her. The doctor admitted that an infection in the gland would cause trouble. He stated that, in his opinion, if Dr. Moore saw no condition on June 18 and July 29 that would warrant an operation on the muscle of the neck, Dr. Moore was totally wrong. Dr. Parsons stated that he did not think that there would be any permanent disability that would attach to Mrs. Walker's injury. He estimated that she would suffer a disability of 15 weeks, and a partial disability of four weeks.

The appellee Mrs. Lucian M. Ferris, the driver of the car which collided with the Robertson car, testified that she was driving northwardly toward her home on June 17, 1958, when the accident complained of occurred; that after she had crossed over the intersection of China and Monroe Streets, and about the middle of the block, Mrs. Robertson's car came to a stop right in front of her, and before she had a chance to put on her brakes she hit the back end of Mrs. Robertson's car, which was in the travel lane next to the grass plot, about one car length in front of her. Mrs. Ferris stated that she saw no signal of any kind to indicate to her that Mrs. Robertson's car was going to stop; that the car stopped suddenly, and the front part of her car struck the rear end of the Robertson car. She stated that after the accident she went over and asked the two ladies if they were hurt, and they said, "No, just excited." She then gave Mrs. Robertson her name and telephone number, and Mrs. Robertson gave her her name and telephone number. Mrs. Ferris denied that she told Mrs. Robertson that "she just didn't see her" and that it was her fault.

Dr. George D. Purvis, a specialist in orthopedic surgery, who was called to testify on behalf of the defendant, stated that ordinarily, in cases of a whiplash injury where there were no broken bones, no dislocation, no evidence of the tearing of the muscle or neurological abnormalities, and no damage to blood vessels, he would expect the strain symptoms to subside within six or eight weeks, and that he would expect any swelling that existed two months after the injury to be explained on some other basis than that of a strain to the muscle. He stated that there are many different causes for nodules in the neck. An infected gland might cause nodules in the neck. He stated that surgery is not generally prescribed for strained muscles. On cross-examination he stated that he had never seen Mrs. Walker to his knowledge. He stated that there were no set symptoms for so-called whiplash injuries; that the only type of enlargement that he would expect to find within 24 hours after such injury would be merely an area of swelling or bleeding into the tissues, which some person might call a nodule. On redirect examination the doctor was asked whether, under the conditions which had been described to him, an operation would be necessary or advisable. He stated that he could not see why an operation would be necessary or advisable.

Dr. Donald S. Hall, an eye, ear, nose and throat specialist, testified that Mrs. Walker came to see him on July 15, 1958, for an examination of a swollen gland on the right side of her neck. The examination showed an enlarged, tender, right submaxillary gland and an enlarged right submaxillary gland duct, which is known as Wharton's duct. He said a gland of that kind is about one inch in diameter. The duct goes from the gland into the floor of the mouth. He stated that he found no nodules when he examined Mrs. Walker. He treated Mrs. Walker about ten times altogether for the enlarged gland and swelling from July 15, 1958, through September 4,

1958. He dilated and opened the duct leading to the gland. That was begun with her first visit and continued through August 19. He had to do surgery, and on August 11 he dilated the duct, and made an incision over the posterior one-third of the duct to give permanent relief. He found evidence of infection. The doctor was asked whether the condition that he described would be caused by an accident or trauma. His answer was, ''No, I think that this was just infection itself.'' The painful condition which he had described had nothing to do with any trauma or accident. On cross-examination the doctor stated that Mrs. Walker underwent surgery to the sternomastoid muscle on the same day that he went into the mouth. The doctor stated that the duct had no connection with the sternomastoid muscle, and he had nothing to do with the trouble that Mrs. Walker was having with her neck.

The first point argued by the appellant's attorneys as grounds for reversal of the judgment of the lower court is that the trial judge erred in refusing to grant the following instruction requested by the appellant:

''The Court instructs the jury for the plaintiff, Mrs. Lurlene Walker, that as a matter of law in this case, Mrs. Lurlene Walker, the plaintiff, was not negligent nor at fault nor to blame for her injuries, if any; and if you believe from the evidence in this case that her injuries were due to the negligence of the defendant, Mrs. Ferris, or to the negligence of both the defendant and the driver of the car in which Mrs. Walker was riding, that it is your sworn duty to find for the plaintiff as against the defendant for the whole injury and this too, even though you may believe the negligence of the driver of the car in which plaintiff was a passenger was greater than the defendant, Mrs. Ferris.''

We think there was no error in the court's refusal to grant the above mentioned instruction. No question of contributory negligence was submitted to the

jury. No question of the appellant's assumption of any risk was submitted to the jury. The only matters which the jury had to decide were whether Mrs. Ferris was negligent, and if so, whether her negligence proximately caused injury to the appellant; and if the jury found for the appellant on those issues, then, what amount of damages was the appellant entitled to recover for the injuries suffered as the result of such negligence.

██ ██ The court granted to the plaintiff the following instruction on the measure of damages:

"The Court instructs the jury for the plaintiff, Mrs. Lurlene Walker, that if you believe from the evidence in this case that she was an invited guest in the automobile of Mrs. Robertson and that she had no control or legal right of control of either the automobile or the driver thereof, then under the law, the negligence, if any, of Mrs. Robertson, the driver of said automobile, cannot be imputed to Mrs. Walker."

That instruction, along with the others given to the plaintiff, were sufficient, in our opinion, to present properly the plaintiff's theory of the case. ██ ██ The instruction which the court refused to grant was argumentative in its nature, and even though it may have embodied a correct statement of the law, there was no error in the court's refusal to grant it.

██ ██ It is next argued that the verdict of the jury was inadequate to compensate the appellant for the personal injuries which she had received as a result of the negligence of the defendant, and that the verdict of the jury was so inadequate as to evince bias, passion and prejudice on the part of the jury. But we think there is no merit in that contention.

Dr. Moore, who treated the appellant after she sustained the whiplash injury, stated that he did not consider the injury a serious injury, and as far as he could

see, there was no need of a surgical operation when he examined her on July 29. Dr. Moore stated that he saw no evidence of a ruptured muscle that would require an operation; and that the accident of June 17 did not have anything to do with the gland trouble for which she received treatment by Dr. Hall. Dr. Hall testified that he treated Mrs. Walker for a swollen gland on the right side of the neck; that, in his opinion, the condition of the gland was not caused by any accident or trauma; that the duct leading to the gland, which he dilated, had no connection with the sternomastoid muscle, which was in the area where Dr. Parsons operated on the same day. Dr. Purvis testified that he saw no need for the operation for strained muscles.

It can be readily seen that the jury had a right to believe that the whiplash injury which the appellant suffered as a result of the automobile accident was a minor injury, and that the swelling and infection for which the appellant was treated by Dr. Hall, and which was relieved by the surgical operation performed by Dr. Hall, when he dilated the duct leading to the submaxillary gland and made the incision over the duct on August 11, was in no way related to the injury sustained by the appellant as a result of the automobile accident of June 17, 1958.

We find no reversible error in the record and the judgment of the lower court is affirmed.

Affirmed.

*McGehee, C.J.,* and *Ethridge, Gillespie* and *Jones, JJ.,* concur.